UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GURPREET SINGH,<br><br>　　　　　　Petitioner,<br><br>　v.<br><br>WARDEN, *et al.*,<br><br>　　　　　　Respondents. | Case No.　1:26-cv-01775-JLT-CDB (HC)<br><br>FINDINGS AND RECOMMENDATIONS TO GRANT PETITION FOR WRIT OF HABEAS CORPUS (A-Number 072 678 097)<br><br>(Doc. 1)<br><br>FINDINGS AND RECOMMENDATIONS TO DENY RESPONDENTS' MOTION TO DISMISS<br><br>(Doc. 7)<br><br>**7-Day Objection Period** |

Petitioner Gurpreet Singh, a federal immigration detainee, initiated this action on March 4, 2026, with the filing of a petition for writ of habeas corpus under 28 U.S.C. § 2241.  (Doc. 1). Petitioner is in custody the of Immigration and Customs Enforcement ("ICE") at the Golden State Annex facility, located in McFarland, California.  *Id.* ¶ 9.  Respondents are: the unnamed Warden of the Golden State Annex facility; Kristi Noem, Secretary of Homeland Security; Pamela Bondi, United States Attorney General; the Department of Homeland Security ("DHS"); and ICE.  *See id.*

On March 4, 2026, Petitioner filed a motion for temporary restraining order ("TRO").  (Doc. 2).  On March 5, 2026, the assigned district judge denied the TRO motion, noting that Petitioner has been detained since September 3, 2025, and does not explain his delay in seeking the TRO or

why the Court should consider the situation as an emergency. (Doc. 4). The district judge referred the petition to the undersigned for further proceedings. *Id.* On March 16, 2026, Respondents filed their answer to the petition (Doc. 8) and a motion to dismiss certain Respondents (Doc. 7).

For the reasons set forth herein, the undersigned recommends that Petitioner's petition for writ of habeas corpus be granted and Respondent's motion to dismiss be denied.

## I.    **Relevant Background**

The background that follows is drawn from Petitioner's allegations (Doc. 1) and the declaration of Mayra Gallenkamp, a Department of Homeland Security ("DHS") deportation officer. (Doc. 8-1). Petitioner did not file a traverse or otherwise contest Ms. Gallenkamp's declaration.

Petitioner is a native and citizen of India who entered the United States without inspection on May 1, 1993. (Doc. 1 ¶ 39; Doc. 8-1 ¶ 1). The former United States Immigration and Nationality Services ("USINS") placed Petitioner into deportation proceedings on June 27, 1994, by filing a form I-221, Order to Show Cause and Notice of Hearing, charging Petitioner as subject to deportation under the Immigration and Nationality Act ("INA"). (Doc. 8-1 ¶ 2; Ex. 1). On June 10, 1996, an immigration judge ordered Petitioner deported in absentia. *Id.* ¶ 3; Ex. 2. On October 25, 1997, Petitioner was arrested by the San Francisco Police Department for driving with a suspended license and, on March 1, 1999, was convicted and fined. *Id.* ¶ 4; Exs. 3, 4. On February 1, 1999, Petitioner was arrested by the Oakland Police Department for driving under the influence. *Id.* ¶ 5; Ex. 4. On October 7, 2000, Petitioner was arrested by the Sacramento Police Department for driving under the influence and with a suspended license. On December 12, 2000, he was convicted of driving under the influence with priors and sentenced to 180 days in jail and four years' probation. *Id.* ¶ 6; Exs. 3, 4.

On February 2, 2010, Petitioner was arrested by immigration officials pursuant to his final order of removal. *Id.* ¶ 7. On August 9, 2010, Petitioner was released from custody and, on December 26, 2012, he was placed by immigration authorities under an order of supervision and enrolled in an Alternatives to Detention program. *Id.* ¶ 8; Ex. 5. On April 12, 2018, Petitioner was arrested by the La Palma Police Department for driving under the influence and, on May 31, 2018,

he was convicted. *Id.* ¶ 9; Exs. 3, 4. On September 3, 2025, DHS officers served Petitioner with a Notice of Revocation of Release and took him into custody pursuant to his final order of removal. *Id.* ¶ Exs. 6, 7, 8. DHS requested travel documents from the Indian consulate in September 2025. *Id.* ¶ 11. Petitioner was interviewed by the Indian consulate regarding the travel documents in January 2026. *Id.* ¶ 12.

On February 16, 2026, the Republic of India Ministry of External Affairs sent a note verbale to the United States Embassy in New Delhi, India, failing to issue travel documents and claiming Petitioner is not an Indian national. *Id.* ¶ 13. On February 18, 2026, DHS served Petitioner with a notice of Decision to Continue Detention. *Id.* ¶ 14; Ex. 9. On February 27, 2026, ICE sent Petitioner's birth certificate to the Republic of India Ministry of External Affairs as proof of Petitioner's citizenship/nationality, and asked them to reconsider the denial of travel documents. The response remains pending. *Id.* ¶ 15; Ex. 10. Respondents assert that, once travel documents are provided, Petitioner's removal can be scheduled. *Id.* ¶ 16.

The Court also takes judicial notice that an immigration judge ordered Petitioner's deportation on June 10, 1996.[1]

## II.    Governing Authority

### A.    The Writ of Habeas Corpus

Writ of habeas corpus relief extends to a person in custody under the authority of the United States. *See* 28 U.S.C. § 2241. A district court considering an application for a writ of habeas corpus shall "award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled thereto." 28 U.S.C. § 2243.

### B.    Due Process

"The Due Process Clause of the Fifth Amendment mandates that '[n]o person shall ... be

---

[1] *See* https://acis.eoir.justice.gov/en/caseInformation (last visited Apr. 2, 2026, using Petitioner's A-Number and nationality); *Daniels-Hall v. National Edu. Ass'n*, 629 F.3d 992, 998-99 (9th Cir. 2010) ("It is appropriate to take judicial notice of this information, as it was made publicly available by government entities ... and neither party disputes the authenticity of the web sites or the accuracy of the information displayed [ ] therein."); *Argueta v. Walgreens Co.*, 760 F. Supp. 3d 1028, 1034 (E.D. Cal. 2024) (taking judicial notice of information on federal government agency's website).

deprived of life, liberty, or property, without due process of law.'" *United States v. Quintero*, 995 F.3d 1044, 1051 (9th Cir. 2021) (citing U.S. Const. amend. V). "The Due Process Clause 'protects individuals against two types of government action': violations of substantive due process and procedural due process." *Id.* (citing *United States v. Salerno*, 481 U.S. 739, 746 (1987)).

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth … Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). "[F]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). "Procedural due process requires that, even where a deprivation of liberty survives substantive due process scrutiny, the action 'be implemented in a fair manner.'" *Quintero*, 995 F.3d at 1051-52 (citing *Salerno*, 481 U.S. at 746). "The 'right to be heard before being condemned to suffer grievous loss of any kind, even though it may not involve the stigma and hardships of a criminal conviction, is a principle basic to our society.'" *Mathews*, 424 U.S. at 902 (citation omitted). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.* (citing *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972).

"[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693 (citations omitted); *see Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017) ("[I]t is well-established that the Due Process Clause stands as a significant constraint on the manner in which the political branches may exercise their plenary authority."). "In the context of immigration detention, it is well-settled that 'due process requires adequate procedural protections to ensure that the government's asserted justification for physical confinement outweighs the individual's constitutionally protected interest in avoiding physical restraint.'" *Hernandez*, 872 F.3d at 990 (quoting *Singh v. Holder*, 638 F.3d 1196, 1203 (9th Cir. 2011)).

///

**C.      Relevant Statutory Framework (8 C.F.R. §§ 241.13(i) and 241.4(l))**

Specific regulations, 8 C.F.R. §§ 241.13(i) and 241.4(*l*), govern how and when ICE may revoke the release of a noncitizen who has been ordered removed.  Section 241.13(i) permits revocation of release "if, on account of changed circumstances, [ICE] determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future."  8 C.F.R. § 241.13(i)(2).  Section 241.13(i) also provides for revocation if a noncitizen "violates any of the conditions of release" in the "order of supervision[.]"  8 C.F.R. § 241.13(i)(1).

Where a petitioner is detained, becomes the subject of a final order of removal, and subsequently is released on an order of supervision upon the expiration of the 90-day removal period, the regulations at 8 C.F.R. §§ 241.13(i) and 241.4(*l*) govern.  *Nguyen v. Hyde*, 788 F. Supp. 3d 144, 152 (D. Mass. 2025); *Escalante v. Noem*, No. 9:25-cv-00182-MJT, 2025 WL 2206113, at *3 (E.D. Tex. Aug. 2, 2025).  As noted by the court in *Escalante*, "[a]fter *Zadvydas*, the immigration regulations were revised to implement administrative review procedures for … those who are re-detained upon revocation of their supervised release."  *Escalante*, 2025 WL 2206113 at *3.  The *Escalante* court further oberved:

> Section 241.13(i)(2)[,] [which is] entitled "Revocation for removal[,]" provides that "the Service may revoke an alien's [supervised] release under this section and return the alien to custody if, on account of changed circumstances, *the Service determines* that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(2) (emphasis added). Section 241.4(b)(4)[,] which is entitled "*Service determination under 8 C.F.R. 241.13*[,]" states that, after supervised release under section 241.13, "*if the Service subsequently determines*, because of a change of circumstances, that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future [to the country to which the alien was ordered removed or] a third county, the alien shall again be subject to the custody review procedures under this section." 8 C.F.R. § 241.4(b)(4) (emphasis added).

*Id.*

These regulations establish that, when ICE revokes release to effectuate removal, "it is [ICE's] burden to show a significant likelihood that the alien may be removed."  *Id.*; *see id.* ("Imposing the burden of proof on the alien each time he is re-detained would lead to an unjust result

5

and serious due process implications."); *e.g.*, *Nguyen*, 788 F. Supp. 3d at 150 ("ICE's decision to re-detain a noncitizen like [Mr. Nguyen] who has been granted supervised release is governed by ICE's own regulation requiring (1) an individualized determination (2) by ICE that, (3) based on changed circumstances, (4) removal has become significantly likely in the reasonably foreseeable future.") (citing *Kong v. United States*, 62 F. 4th 608, 619-20 (1st Cir. 2023)); *Roble v. Bondi*, No. 25-cv-3196-LMP-LIB, 2025 WL 2443453, at *4 (D. Minn. Aug. 25, 2025) ("[T]he regulations at issue in this case place the burden on ICE to first establish changed circumstances that make removal significantly likely in the reasonably foreseeable future."); *Abuelhawa v. Noem*, No. 4:25-cv-04128, 2025 WL 2937692, at *8 (S.D. Tex. Oct. 16, 2025) ("[U]pon revocation of release, the Government bears the burden to show a significant likelihood that the alien may be removed in the reasonably foreseeable future.").

Detention is permissible only if ICE can show that there is a significant likelihood of removal in the reasonably foreseeable future or if there was a violation of the order of supervision. *See* 8 C.F.R. § 241.13(i).

## III.   Exhaustion

### A.   Governing Authority

"Section 2241 … 'does not specifically require petitioners to exhaust direct appeals before filing petitions for habeas corpus.'" *Laing v. Ashcroft*, 370 F.3d 994, 997 (9th Cir. 2004) (citing *Castro-Cortez v. INS*, 239 F.3d 1037, 1047 (9th Cir. 2001)). The Ninth Circuit, however, requires that, "as a prudential matter, that habeas petitioners exhaust available judicial and administrative remedies before seeking relief under § 2241." *Castro-Cortez*, 239 F.3d at 1047 (citing *United States v. Pirro*, 104 F.3d 297, 299 (9th Cir. 1997)). "Under the doctrine of exhaustion, 'no one is entitled to judicial relief for a supposed or threatened injury until the prescribed ... remedy has been exhausted.'" *Laing*, 370 F.3d at 997-98 (citing *McKart v. United States*, 395 U.S. 185, 193 (1969)). "Exhaustion can be either statutorily or judicially required. If exhaustion is required by statute, it may be mandatory and jurisdictional, but courts have discretion to waive a prudential requirement." *Id.* at 998 (citing *El Rescate Legal Servs., Inc. v. Executive Office of Immigration Review,* 959 F.2d 742, 746 (9th Cir. 1991); *Stratman v. Watt,* 656 F.2d 1321, 1325-26 (9th Cir. 1981)). "Although

courts have discretion to waive the exhaustion requirement when it is prudentially required, this discretion is not unfettered…. Lower courts … [must] first determin[e whether] the exhaustion requirement has been satisfied or properly waived." *Id.* (internal citations omitted); *see Murillo v. Mathews*, 588 F.2d 759, 762, n.8 (9th Cir. 1978) ("Although the application of the rule requiring exhaustion is not jurisdictional, but calls for the sound exercise of judicial discretion, it is not lightly to be disregarded.").

### B.    Analysis

Neither Petitioner nor Respondents address exhaustion in their filings. *See* (Docs. 1, 8). The Court finds that the prudential exhaustion requirement should be waived as it would be futile to seek release by administrative means given Respondents' position that Petitioner, with a final order of removal, is subject to detention under 28 U.S.C. § 1231 pending the effectuation of his removal. *See* (Doc. 8 at 1); *El Rescate Legal Servs.*, 959 F.2d at 747-48 ("where the agency's position on the question at issue appears already set, and it is very likely what the result of recourse to administrative remedies would be, such recourse would be futile and is not required.") (internal quotations and citation omitted). For these reasons, the undersigned recommends that the prudential exhaustion requirement be waived for Petitioner's claim for habeas corpus relief.

## IV.    **Discussion**

Petitioner asserts five causes of action in his petition: (1) violation of procedural due process under the Fifth Amendment to the U.S. Constitution; (2) violation of the Immigration and Nationality Act (8 U.S.C. § 1231); (3) violation of the Fifth Amendment for prolonged post-order detention; (4) violation of the Administrative Procedure Act; and (5) unlawful re-detention without material change in likelihood of removal (8 C.F.R. § 241.13). (Doc. 1 at 7-11).

As set forth below, because the undersigned finds that Respondents failed to follow their own regulations in revoking release and have failed to show a significant likelihood that ICE will be able to remove Petitioner to India in the reasonably foreseeable future, and as Petitioner's other arguments seek the same or similar relief (*i.e.*, for immediate release), the undersigned elects to forgo addressing Petitioner's other grounds for relief.

///

**A.**     **Respondents Failed to Follow Applicable Regulations in Revoking Petitioner's Release**

The Court first addresses whether ICE followed its own regulations applicable to the procedure the governs Petitioner's re-detention.  "Courts have found that when ICE fails to follow its own regulations in revoking release, the detention is unlawful, and the petitioner's release must be ordered."  *Truong v. Noem*, No. 25-CV-2597-JES-MMP, 2025 WL 2988357, at *6 (S.D. Cal. Oct. 22, 2025) (collecting cases).

The applicable regulations provide that "[u]pon revocation, the alien will be notified of the reasons for revocation of his or her release or parole.  The alien will be afforded an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification."  8 C.F.R. § 241.4(*l*)(1).  The procedure is elaboration upon in 8 C.F.R. § 241.4(i)(3):

> Upon revocation, the alien will be notified of the reasons for revocation of his or her release.  The Service will conduct an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification.  The alien may submit any evidence or information that he or she believes shows there is no significant likelihood he or she be removed in the reasonably foreseeable future, or that he or she has not violated the order of supervision.  The revocation custody review will include an evaluation of any contested facts relevant to the revocation and a determination whether the facts as determined warrant revocation and further denial of release.

8 C.F.R. § 241.13(i)(3).

The same section also sets forth additional factors for consideration relating to a significant likelihood of removal, including "the history of the alien's efforts to comply with the order of removal, the history of the Service's efforts to remove aliens to the country in question or to third countries, including the ongoing nature of the Service's efforts to remove this alien and the alien's assistance with those efforts, the reasonably foreseeable results of those efforts, and the views of the Department of State regarding the prospects for removal of aliens to the country or countries in question."  8 C.F.R. § 241.13(f).

Though Respondents did provide Petitioner with a Notice of Revocation of Release purporting to explain the grounds for the changed circumstances resulting in his re-detainment, the notice itself is deficient. The notice is vague because it does not provide any information regarding these changed circumstances and how the changed circumstances made Petitioner's removal significantly likely in the reasonably foreseeable future. In support, the notice states only that, "ICE has determined that there is a significant likelihood of removal in the reasonably foreseeable future in your case." (Doc. 8-2 at 31). No further information is provided. In fact, although Petitioner was re-detained by immigration authorities on September 3, 2025, he was not interviewed by the Indian Consulate in connection with obtaining travel documents until approximately four months later (*see* Doc. 8-1 ¶ 12), which tends to suggest that, upon his arrest, there was no significant likelihood he could be removed in the reasonably foreseeable future.

Additionally, the notice fails to address any of the relevant factors under 8 C.F.R. § 241.13(f), including, among other things, an examination of past and ongoing efforts to remove petitioner to a specific country, the "reasonably foreseeable results of those efforts," and the view of the Department of State "regarding the prospects for removal" of Petitioner to the specific country. *See* 8 C.F.R. § 241.13(f); *Truong*, 2025 WL 2988357, at *4 (finding notice vague where the notice "advises Petitioner of ICE's determination that, pursuant to 8 C.F.R. § 241.4, he will be kept in its custody" but "any allegations that Petitioner engaged in conduct that violate conditions of his release are conspicuously absent from the [n]otice," which "also does not indicate which criteria under 8 C.F.R. § 241.4 is implicated and supports that the Government was justified in re-detaining Petitioner.").

A vague notice deprives the Petitioner of the opportunity to respond to the grounds for revocation of release. *See Truong*, 2025 WL 2988357, *4 ("It would be impossible for a noncitizen to challenge and successfully overcome ICE's reasons for detaining them, if they are never informed of those reasons. The Court finds that the Notice's contents fail to provide any, let alone sufficient, notice of the Government's basis for revoking Truong's release."). As such, the vague notice renders any subsequent interview deficient as, without proper notice of the grounds supporting changed circumstances, Respondent has no meaningful way to respond to them, as

required by 8 C.F.R. § 241.4(*l*)(1).  Nor did Respondents proffer evidence that they conducted such an interview.  *See id.* at *5 ("Respondents fail to address whether Truong's informal interview—which provides noncitizens with an opportunity to contest their detention—was conducted.  In light of this omission, the Court finds that Respondents failed to comply with its duties under 8 C.F.R. § 241.4(l)(1) because Truong was not provided with an informal interview.").

Further, Respondents do not establish that they determined changed circumstances existed prior to detaining Petitioner.  The regulations require that this determination is made *before* the removable alien has had his release revoked.  *See Tran v. Noem*, No. 3:25-CV-02391-BTM-BLM, 2025 WL 3005347, at *2 (S.D. Cal. Oct. 27, 2025) ("Respondents assert that they have determined that there are changed circumstances and that Tran will be removed to Vietnam in the reasonably foreseeable future.  While that may certainly be the case now, § 241.13(i)(2) requires that this determination is made before the removable alien has had his release revoked.").  There is no indication of this in the record.  *See* (Doc. 8).

In sum, Respondents failed to follow their own regulations in re-detaining the Petitioner.  *See, e.g., Rokhfirooz v. Larose*, 804 F. Supp. 3d 1095, 1099-1100 (S.D. Cal. 2025) (ordering petitioner's release where ICE failed to follow § 241.13).

**B.      Respondents Fail to Show that Petitioner's Removal is Reasonably Foreseeable Under the Governing Statutory Framework**

Next, the Court will turn to the grounds set forth by Respondents regarding the foreseeability of release.  As noted *supra*, pursuant to 8 C.F.R. § 241.13(i)(2), ICE may revoke a noncitizen's release if, "on account of changed circumstances, [ICE] determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future."  8 C.F.R. § 241.13(i)(2).

There are two problems with Respondents' argument regarding their belief that Petitioner's travel documents will be issued promptly by India.  (Doc. 8 at 3).  First, the argument relies on information and events that post-date Petitioner's arrest and re-detention and the associated alleged violation of his due process rights.  Thus, it does not inform or otherwise undermine the Court's above finding that the stated rationale for Petitioner's arrest and re-detention – to wit, "changed

circumstances" – does not meet the "significant likelihood of removal in the reasonably foreseeable future" standard required to revoke release under 8 C.F.R. § 241.13(i).  Indeed, Respondents' declarant attests that DHS submitted a request for travel documents to the Indian consulate in September 2025, the same month as Petitioner's re-detention (on September 3, 2025), but Respondents conveniently fail to identify the specific day in September when they submitted this request, and based on the lack of information provided, there is no reason to find that Respondents took any action in connection with Petitioner's travel until *after* he was re-detained.  (Doc. 8-1 ¶ 11).  Consistent with this, Petitioner was not interviewed by the Indian Consulate in connection with obtaining travel documents until approximately four months after his re-detention.  *Id*. ¶ 12)

Second, the date of transmittal of Petitioner's birth certificate to India was February 27, 2026, over one month prior to the undersigned's findings.  *Id.* ¶ 15.  Presumably, had a travel document issued in the meantime, Respondents would have notified the Court; yet, they have made no supplemental filings to confirm whether a travel document has been procured.  It has now been well over six months since Petitioner was detained and Petitioner remains present within the United States and Respondents do not possess travel documents to execute his removal.  For these reasons, the undersigned finds that Respondents fail under section 241.13(i) to show that there any changed circumstances evidencing a significant likelihood that Petitioner may be removed in the reasonably foreseeable future.  *See Escalante*, 2025 WL 2206113 at *3 ("it is [ICE's] burden to show a significant likelihood that the alien may be removed.").

In sum, the undersigned finds that Respondents' failure to comply with 8 C.F.R. § 241.13(i) violated Petitioner's procedural due process rights under the Fifth Amendment to the U.S. Constitution.  *See, e.g.*, *Truong*, 2025 WL 2988357, at *5-6; *Nguyen v. Andrews*, No. 1:26-cv-00015 DAD SCR, 2026 WL 263058, at *4 (E.D. Cal. Feb. 2, 2026), *report and recommendation adopted*, No. 1:26-cv-00015-DAD-SCR, 2026 WL 412183 (E.D. Cal. Feb. 13, 2026) ("Moreover, the government was required to make a sufficient showing that petitioner's removal is significantly likely in the foreseeable future based on changed circumstances before it revoked his release."); *Rokhfirooz*, 804 F. Supp. 3d at 1099 ("The Court concludes that DHS failed to comply with the requirement of Section 241.13(i)(2) that, in order to revoke Petitioner's release, DHS determine on

account of changed circumstances that 'there is a significant likelihood that the alien may be removed in the reasonably foreseeable future' … there is no evidence that DHS has made such a determination as to the revocation of Petitioner's release even after the fact of arrest, up to the present day.").

Thus, the undersigned will recommend that Petitioner's petition be granted as to his request for release.  The undersigned will not reach Petitioner's other claims seeking the same relief.

## V.        Respondents' Motion to Dismiss

Petitioner names as Respondents the unnamed Warden of the Golden State Annex facility; Kristi Noem, Secretary of Homeland Security; Pamela Bondi, United States Attorney General; the Department of Homeland Security ("DHS"); and ICE.  *See* (Doc. 1).  Respondents seek dismissal of all named Respondents besides Petitioner's immediate custodian.  (Doc. 7).

"[L]ongstanding practice confirms that in habeas challenges to present physical confinement—'core challenges'—the default rule is that the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official."  *Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004).  The Ninth Circuit has "affirm[ed] the application of the immediate custodian and district of confinement rules to core habeas petitions filed pursuant to 28 U.S.C. § 2241, including those filed by immigrant detainees."  *Doe v. Garland*, 109 F.4th 1188, 1199 (9th Cir. 2024).

The Ninth Circuit in *Doe* held that "*Padilla* set forth a clear rule requiring core habeas petitioners challenging their present physical confinement to name their immediate custodian, the warden of the facility where they are detained, as the respondent to their petition."  *Doe*, 109 F.4th at 1197.  The Ninth Circuit also held that, when a "habeas petitioner challenges a form of 'custody' other than present physical confinement, the respondent can be the entity or person who exercises legal control with respect to the challenged 'custody.'"  *Id.* at 1192 n.2 (quotation marks omitted; citing *Padilla*, 542 U.S. at 438).

As Petitioner has named his immediate custodian as a Respondent, namely the warden of the Golden State Annex facility, and the undersigned recommends the petition be granted and an injunction be entered regarding future re-detainment of Petitioner by Respondents, the undersigned

will recommend that the Court deny Respondents' motion to dismiss (Doc. 7).

VI.     **Conclusion and Recommendation**

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Petitioner's petition for writ of habeas corpus (Doc. 1) be GRANTED;

2. Respondents' motion to dismiss (Doc. 7) be DENIED;

3. Respondents be ORDERED to release Petitioner immediately, subject to preexisting conditions of supervision;

4. Respondents be ENJOINED AND RESTRAINED from re-detaining Petitioner absent compliance with applicable due process including 8 C.F.R. §§ 241.4 and 241.13, and any other applicable statutory and regulatory procedures; and

5. The Clerk of the Court be directed to enter judgment for Petitioner and to close this case.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  **Within seven (7) days** after being served with these findings and recommendations, the parties may file written objections with the Court.  Although this objection period is shorter than provided by Local Rule, such an adjustment is warranted given the nature of Petitioner's harm, the finding of a violation of the U.S. Constitution by Respondents, and the fact that the parties have extensively briefed the issues involved.  *See United States v. Barney*, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam) ("The court may require a response within a shorter period if exigencies of the calendar require.").  Any objections filed should be captioned, "Objections to Magistrate Judge's Findings and Recommendations" and shall not exceed 15 pages without leave of Court and good cause shown. The Court will not consider exhibits attached to the Objections.  To the extent a party wishes to refer to any exhibit(s), the party should reference the exhibit in the record by its CM/ECF document and page number, when possible, or otherwise reference the exhibit with specificity.  Any pages filed in excess of the 15-page limitation may be disregarded by the District Judge when reviewing these findings and recommendations under 28 U.S.C. § 636(b)(l)(C).

The parties are advised that failure to file objections within the specified time may result in

the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:    **April 6, 2026**

_____
UNITED STATES MAGISTRATE JUDGE